## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RONALD J. MILLER, on behalf of himself and all others similarly situated,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No. 12-** |
| **v.** ) | |
| ) | **CLASS ACTION** |
| **TRANS UNION, LLC,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## COMPLAINT – CLASS ACTION

## PRELIMINARY STATEMENT

1.     This is a consumer class action based upon Defendant Trans Union, LLC's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA"). The rights of consumers to inspect and correct consumer information sold about them are at the heart of the FCRA. Defendant deprives consumers of these rights by willfully failing to provide consumers with complete and truthful "OFAC alert" information it sells about them to third parties. OFAC alerts purportedly advise creditors whether the credit applicant is a match to terrorists, money launderers, narcotics traffickers and other enemies of the United States identified on the Office of Foreign Assets Control, Specifically Designated National and Blocked Persons ("OFAC") list. Defendant thus deprives consumers of rights afforded to them by the FCRA to obtain a copy of and review the information that the Defendant sells about them and to dispute, and to have corrected, any inaccurate or incomplete OFAC alert information that the Defendant is reporting.

## JURISDICTION AND VENUE

2.     Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3.     Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4.     Plaintiff Ronald J. Miller is an adult individual who resides in Gordon, Pennsylvania.

5.     Defendant Trans Union, LLC ("Trans Union") is a consumer reporting agency that regularly conducts business in the Middle District of Pennsylvania and which has a principal place of business located at 1510 Chester Pike, Crum Lynne, PA 19022.

## FACTUAL ALLEGATIONS

### A.     Defendant Fails To Provide Consumers With Complete And Truthful Information About What OFAC Alert Information Is In Their Files

6.     Defendant is one of the "big three" credit reporting agencies (singular "CRA") in the United States.

7.     Defendant sells consumer reports (commonly called "credit reports") about millions of consumers annually.

8.     Defendant is regulated by the FCRA.

9.     The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

10.     In furtherance of these goals, the FCRA mandates that a CRA provide consumers, upon request, all of the information sold about them to third parties and also provide consumers with an opportunity to review and dispute any inaccuracies in their files. *See* 15 U.S.C. §§ 1681g(a), 1681i(a).

11.    Specifically, each CRA is required by the FCRA to provide consumers with copies of their consumer files without charge every twelve months, after a credit denial and in other limited circumstances.  *See* 15 U.S.C. § 1681g(a).

12.    The term "file," when used in connection with information on any consumer, means "**all** of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."  *See* 15 U.S.C. § 1681a(g) (emphasis added).

13.    "Congress clearly intended the protections of the FCRA to apply to all information furnished or that might be furnished in a consumer report" and an FCRA " 'file' denotes all information on the consumer that is recorded and retained by a consumer reporting agency that might be furnished, or has been furnished, in a consumer report on that consumer." *Cortez*, 617 F.3d at 711-12, *citing Gillespie v. Trans Union*, 482 F.3d 907, 909 (7th Cir. 2007).

14.    After obtaining and reviewing a copy of their files, consumers have the right to dispute any inaccurate information in their credit files, and to have errors corrected by the CRA, usually within 30 days of their disputes.  *See* 15 U.S.C. § 1681i(a).

15.    In a seminal decision against this very Defendant, the Third Circuit found that Trans Union willfully violated § 1681g of the FCRA by failing to provide the consumer-plaintiff with all information in her file.  It further held that information relating to the OFAC alert is part of the consumer's 'file' as defined in the FCRA."  *Cortez*, 617 F.3d at 712.

16.    An OFAC alert is a specific type of data provided by consumer reporting agencies on consumer credit reports signifying that the subject of the report is purportedly included in the list of the Office of Foreign Assets Control, Specifically Designated National and Blocked Persons, which includes terrorists, money launderers and narcotics traffickers.

17.    In *Cortez*, this Defendant had contended that it did not need to reinvestigate or correct erroneous OFAC alerts that it placed on consumer reports allegedly because the OFAC alerts were not part of the consumer's file. *Id.* at 713. The Third Circuit squarely rejected these arguments by Defendant. *Id.*

18.    The Third Circuit in *Cortez* specifically found that Trans Union willfully violated the FCRA by failing to disclose OFAC alerts in consumer files and for failing to reinvestigate and correct an OFAC alert erroneously attributed by Trans Union to the wrong consumer. *Id.* at 712-13.

19.    Nonetheless, despite this clear Third Circuit precedent directed to this Defendant, Trans Union continues to compile and sell reports about consumers that include OFAC alerts, without completely and truthfully disclosing such information to the consumers who are the subject of such reports, such as Plaintiff. Defendant remains in willful violation of the FCRA and has refused to follow the Third Circuit's ruling in *Cortez*.

20.    Defendant also fails to maintain reasonable procedures to assure the maximum possible accuracy of the OFAC alert information it sells about consumers in the first place. *See* 15 U.S.C. § 1681e(b).

21.    OFAC alerts are part of the consumer's file and report and are subject to the maximum possible accuracy standard, as the Third Circuit has specifically advised Trans Union: "OFAC information included in a consumer report and sold about a consumer falls within the purview of the FCRA, and the 'maximum possible accuracy standard.' Trans Union remains responsible for the accuracy in its reports under the FCRA and it cannot escape that responsibility as easily as it suggests here. Congress clearly intended to ensure that credit reporting agencies exercise care when deciding to associate information with a given consumer,

and the record clearly supports the jury's determination that Trans Union did not exercise sufficient care here." *Cortez*, 617 F.3d at 710.

22.    In *Cortez*, Defendant had mixed the consumer-plaintiff in the case with another woman from Columbia who had a similar name and who was on the OFAC list.  Defendant attributed that unrelated woman's criminal history to the plaintiff, Ms. Cortez.

23.    Despite the abundant notice it has regarding the unlawfulness of its practices, and the serious harm such practice can inflict, Defendant continues to use a "name only" match in determining whether a given consumer will be reported on his/her Trans Union consumer credit report as an alleged criminal on the OFAC list.

24.    Moreover, under Defendant's procedures, not even the name only match needs to be an exact match between the actual name of the alleged criminal on the OFAC list and the actual name of the innocent consumer applying for credit.

25.    As such, Defendant places OFAC alerts on consumer's reports based solely on partial name match.

26.    Nevertheless, Defendant advises the users of its reports that the subject consumer is a "match" to the OFAC list.

27.    Defendant's reporting and disclosures of OFAC alert information is not accidental, nor a result of simple negligence, but instead a result of deliberately designed policies and procedures, and with full knowledge that its policies and procedures were found to violate the FCRA by the Third Circuit in *Cortez*.

B.    **The Experience Of The Representative Plaintiff**

28.    Plaintiff obtained a copy of his Trans Union file (entitled "Personal Credit Report") on October 13, 2011.

29.    The October 13, 2011 file included Plaintiff's personal identifying information, his account information and information about inquiries for his credit.

30.    After disclosing information under the headings of "Personal Information," "Adverse Accounts," "Satisfactory Accounts, "Regular Inquiries" and "Account Review Inquiries," the file then stated "End of Credit Report."

31.    Beneath the heading "End of Credit Report," the October 13, 2011 file stated as follows:

-Begin Additional Information-

**Additional Information**
The following disclosure of information is provided as a courtesy to you.  This information is not part of your TransUnion credit report, but may be provided when TransUnion receives an inquiry about you from an authorized party.  This additional information can include Special Messages, Possible OFAC Name Matches, Income Verification and Inquiry Analysis Information.  Any of the previously listed information that pertains to you will be listed below.

32.    Thus, despite the holding of *Cortez*, Trans Union continues to intentionally misrepresent to consumers, such as Plaintiff, that OFAC alerts are not actually part of their reports or files.

33.    Because Defendant states that OFAC alerts are "additional information" provided only as a "courtesy," consumers such as Plaintiff are misguided into believing that they have no rights or recovery under the FCRA against the Defendant when it mistakenly reports them as OFAC criminals and they cannot dispute, and have corrected, inaccurate OFAC information that Defendant alone is attributing to them.

34.     Worst, Plaintiff's Trans Union file does not actually disclose the OFAC alert that

Defendant has determined matches with Plaintiff.  The files states:

**Possible OFAC Match**
The OFAC Database contains a list of individuals and entities that are prohibited
by the U.S. Department of Treasury from doing business in or with the United
States.  Financial institutions are required to check customers' names against the
OFAC Database, and if a potential name match is found, to verify whether their
potential customer is the person on the OFAC Database.  For this reason, some
financial institutions may ask for your date of birth, or they may ask to see a copy
of a government-issued form of identification, such as a Driver's License, Social
Security card, passport or birth certificate.  Some financial institutions will search
names against this database themselves, or they may ask another company, such
as TransUnion, to do so on their behalf.  We want you to know that this
information may be provided to such authorized parties.

As a courtesy to you, we also want to make sure you are aware that the name that
appears on your TransUnion credit file **is considered a *potential* match to
information listed on the United States Department of Treasury's Office of
Foreign Asset Control ("OFAC") Database.**

**The OFAC record that is considered a potential match to the name on your
credit file is:**

**[Intentionally Left Blank]**

For more details regarding the OFAC Database, please visit:
http://www.ustreas.gov/offices/enforcement/ofac/faq/index.shtml.

35.     Further, as noted above, Defendant advises the users of its reports that the subject

consumer is not merely a "possible match" to the OFAC list, as it states to consumers such as

Plaintiff, but an actual "match" to the OFAC list.

36.     The above quoted information relating to the OFAC alert concerning Plaintiff is

part of his "file" as defined in the FCRA.

37.     The October 13, 2011 file was not a complete and proper file disclosure as

required by section 1681g(a) of the FCRA.

38.    The October 13, 2011 file violated section 1681g(a) of the FCRA, as well as this Circuit's FCRA jurisprudence in *Cortez*, in a number of ways, including the following:

(a)    Trans Union falsely represented that the OFAC information was not part of Plaintiff's credit report;

(b)    The OFAC information was not included in the consumer's file but was instead set forth separately in a different disclosure labeled "Additional Information;"

(c)    Trans Union represented that Plaintiff "is considered a *potential* match to information listed on" the OFAC Database (emphasis in original), but did not disclose the OFAC record considered a potential match that it would sell to a third party.

39.    Plaintiff is neither a match to the OFAC list, nor a possible match, nor does any other entity or person "consider" Plaintiff to be a potential match.

40.    Defendant, however, represents that Plaintiff is associated with some unknown criminal on the OFAC list.

41.    As a result of Defendant's failure to provide Plaintiff with all of the information it maintains and/or sells about him, in particular the OFAC alert information concerning a potential or actual match, Plaintiff was misled concerning the information that Defendant was reporting about him to third parties, and is uncertain as to whether Defendant is in fact reporting Plaintiff as a match to an individual on the OFAC database.

42.    Further, Plaintiff was deprived of all information in his file, to which he is entitled, and the opportunity to dispute and correct the inaccurate OFAC alert that Defendant inaccurately associated with him on his report.

43.    Naturally, Plaintiff is humiliated and embarrassed that Defendant considers him a match or possible match to some suspected criminal on the OFAC list, and distressed over the

fact that Defendant does not even provide sufficient information about what suspected criminal's information is purportedly a match or a possible match with Plaintiff.

44.     At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

45.     At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action on behalf of the following Class:  All persons residing at an address within the jurisdiction in the United States Court of Appeal for the Third Circuit to whom Trans Union provided a Personal Credit Report substantially similar in form to the one Trans Union provided to Plaintiff dated October 13, 2011, and described in paragraphs 31-34 above, during the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of the resolution of this case.

47.     The Class is so numerous that joinder of all members is impracticable.  Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that the Class numbers in the hundreds if not thousands.

48.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  The principal questions concern whether the Defendant violated the FCRA by failing to provide complete and truthful information relating to consumers in their personal credit reports; and, whether Defendant acted willfully in violating the FCRA with knowledge of the *Cortez* decision by the Third Circuit.

49.     Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

50.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is committed to vigorously litigating this matter.  Further, Plaintiff has secured counsel experienced in handling consumer class actions.  Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this claim.

51.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

52.     Whether Defendant violated the FCRA can be easily determined by Defendant's policies and a ministerial inspection of Defendant's business records.

53.     A class action is a superior method for the fair and efficient adjudication of this controversy.  Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims.  The identities of the Class members may be derived from Defendant's records.

## CLAIMS

## COUNT I - VIOLATION OF THE FCRA § 1681g(a)

54.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

55.     Pursuant to section 1681n of the FCRA, Defendant is liable for willfully failing to provide consumers such as Plaintiff with all information in the consumer's file in violation of 15 U.S.C. § 1681g(a).

WHEREFORE, Plaintiff respectfully prays that an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class against Defendant for statutory and punitive damages for violation of 15 U.S.C. §1681g, pursuant to 15 U.S.C. § 1681n; that the Court award costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n; and that the Court grant such other and further relief as may be just and proper.

## COUNT II - VIOLATION OF THE FCRA § 1681e(b)

56.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

57.     Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for negligently and willfully failing to maintain reasonable procedures to assure maximum possible accuracy of the consumer reports it sold in violation of 15 U.S.C. § 1681e(b).

WHEREFORE, Plaintiff respectfully prays that an order be entered for judgment in his favor and against Defendant Trans Union for statutory, actual and punitive damages for violation of 15 U.S.C. §1681e(b), pursuant to 15 U.S.C. §§ 1681n and 1681o, and for reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## JURY TRIAL DEMAND

58.     Plaintiff demands trial by jury on all issues.


Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

BY:     _s/ James A. Francis_
        JAMES A. FRANCIS
        JOHN SOUMILAS*
        DAVID A. SEARLES*
        Land Title Building, 19th Floor
        100 South Broad Street
        Philadelphia, PA 19110
        (215) 735-8600


**ANDERSON, OGILVIE & BREWER, LLP**
ANDREW J. OGILVIE*
600 California Street, 18th Floor
San Francisco, CA  94108
Telephone:  (415) 651-1952
Facsimile:   (415)956-3233


* _Pro Hac Vice_ applications forthcoming

Dated: August 28, 2012                    Attorneys for Plaintiff and Class